Dickson J. Young, Esq.
Jonathan T. Woodward, Esq.
WHITESTONE, BRENT, YOUNG & MERRIL, P.C.
10513 Judicial Drive, Suite 300
Fairfax, VA 22030
Tel: (703) 591-0200
Fax: (703) 591-7238
Dickson.Young@wbymlaw.com
Jon.Woodward@wbymlaw.com

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>vs.<br><br>JAMES DOUGLAS MANRING,<br>*Defendant.* | Case No. 1:13CR00013-001<br><br>DEFENDANT MANRING'S<br>SENTENCING MEMORANDUM |

Mr. Manring appears before the Court for a first offense, Production of Child Pornography. There is a mandatory minimum sentence of 10 years incarceration and the advisory guideline range is 168-210 months. Mr. Manring respectfully requests that the Court also consider the other sentencing factors outlined in 18 U.S.C. § 3553(a) when determining the appropriate sentence for his wrongful conduct.

WHITESTONE, BRENT,
YOUNG & MERRIL, P. C.
ATTORNEYS AT LAW
SUITE 300
10513 JUDICIAL DRIVE
FAIRFAX, VIRGINIA 22030
(703) 591-0200
FAX (703) 591-7238

Although the Court is aware of the sentencing factors enumerated in 18 U.S.C. § 3553(a), it is easier to address them when they are in front of us. These factors are: (1) the nature and circumstances of the offense and the personal history and characteristics of the defendant; 2) the need for the sentence imposed to reflect (A) the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;(3) the kinds of sentences available; (4); (5) the guidelines and policy statements; (6) the need to avoid unwanted sentencing disparities; and (7) the need to pay restitution to victim.

**(1) With respect to Mr. Manring's personal history and characteristics, the following is noteworthy:**

James "Doug" Manring was the third of four children raised in a middle class environment by loving, caring parents. He enjoyed a close relationship with both parents. However, his father was an aviation squadron commander in the U.S. Navy and was often gone for six to eight months at a time. Doug cherished the time he spent with his father building model cars and planes. He dreaded the days his father left and he lived in fear his father would never return. He found his father's departures

somewhat traumatizing, and at age 10 prior to one of his departures, his father told him, "You're the man of the house now." Doug craved his father's attention, was desperate for his father's approval and, even as an adult, was eager to make him proud. Sadly, his father passed away at age 61, while Doug was living in Japan. This loss continues to weigh heavily on him. Given Doug's small stature, he was often teased as a child. Additionally, he was rather introverted and struggled socially as a child. He was a daydreamer who preferred to spend hours alone, or with is siblings, engaged in imaginary play.

Mentally and emotionally, Doug described himself as "a child living in an adult world." He explained that he could not function socially in an adult world; he could only function with those younger than him. Doug reflected that he was likely depressed as a child and he acknowledged having a very low self-esteem. His brother noted that "Doug was always a major misfit, he had no filter." Doug could not determine what was appropriate and what was not. Doug noted and his brother confirmed that their mother was often depressed but also exhibited "highs and lows" and their father also suffered from depression.

During college, Doug sought counseling in the Quaker community, as his mother had been involved in this community. He learned

how to better interact with adults and felt that teaching others helped him interact. Not surprisingly, Doug chose a career in teaching and working with those younger than he, to assist them in developing musical talent and instructing them in physical education.

With respect to this offense, Doug is deeply remorseful. He is sincere in his desire to understand his conduct and he is eager to participate in counseling.

Doug's family and friends describe him as "gentle and caring" and "bright, creative and motivated." His younger brother, Michael, added, "He has a truly generous spirit and takes great pleasure in looking for ways to help others realize their dreams."

Doug Manring is just over five feet tall and weighs 110 pounds. He is very slight and small in stature. The Court should also consider his vulnerability for victimization and abuse while incarcerated.

> **(2)** **The need for the sentence imposed to reflect (A) the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and**

### (3) the kinds of sentences available.

There is a mandatory minimum sentence of 10 years imprisonment in this case. Doug Manring not only wants counseling, but is in fact desperately seeking counseling. Despite the lengthy term of incarceration, he has reported that he will use his time in custody to help and teach others. He has already started to help another inmate learn to draw. According to his friends of 30 years, Joseph and Maryann Kane, "Doug is not someone who society needs to toss away. He is a natural born teacher. We have maintained some sporadic contact while he has been incarcerated and in each phone discussion, he has discussed with me about using his own instruments to teach music in prison. Even in the light of possibly losing the rest of his days to some form of incarceration, he looks for a positive way to spend that time – helping those around him in a positive manner." Another friend, Andrea Rogers noted, "Yes it was terrible and devastating, but not hopeless. I cannot in my heart throw away a friend who has worked so hard, been so helpful and a positive influence for our family and the community. I think he is at a point where he has shown remorse, he has acknowledged what he did, and with help will be able to understand why and to make sure that it never happens again. I believe with the right kind of help he will be rehabilitated."

A 10-year sentence in this case is "sufficient but not greater than necessary." Being confined, incarcerated and away from one's family for 10 years is definitely punishment. His absence from society inherently protects the public from any further crimes by Mr. Manring.

With respect to recidivism, one of the priorities of the U.S. Sentencing Commission for the upcoming amendment cycle is priority number (6) Undertaking a comprehensive, multi-year study of recidivism, including (A) examination of circumstances that correlate with increased or reduced recidivism; (B) possible development of recommendations for using information obtained from such study to reduce costs of incarceration and overcapacity of prisons; and (C) consideration of any amendments to the Guidelines Manual that may be appropriate in light of the information obtained from such study. *See* U.S. Sentencing Commission, *Sentencing Guidelines for United States Courts* (2012), available at http://www.ussc.gov/Legal/Federal_Register_Notices/20120821_FR_Final_Priorities.pdf.

A new report was released on January 13, 2013, entitled, *Recidivism of Offenders on Federal Community Supervision. See* Rhodes et al., *Recidivism of Offenders on Federal Community Supervision*, Dept. of Justice (2013), available at https://www.ncjrs.gov/pdffiles1/bjs/grants/241018.pdf. The report was authored by William Rhodes, Ph.D., Christina

Dyous, M.A., Ryan Kling, M.A., Dana Hunt, Ph.D., Jeremy Luallen, Ph.D., and the study was funded by the Department of Justice. The report identifies several factors that can increase or decrease a person's risk of committing a new offense or being revoked during their period of supervision. Factors that increase risk include criminal history, gender, race, drug abuse problems, mental health issues, unemployment and the need for financial help, housing, and transportation. Factors that decrease risk include having a strong social support system, marketable educational and vocational skills, motivation to change and age. Mr. Manring is 54 years old. Studies have demonstrated the low risk of recidivism for defendants over age 40 and declining exponentially as defendants age. Defendants "over the age of forty...exhibit markedly lower rates of recidivism in comparison to younger defendants." U.S. Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, 12, 28 (2004). *See* U.S. v. Lucania, 379 F.Supp.2d 288, 297 (E.D.N.Y.) (post-Booker courts have noted that recidivism is markedly lower for older defendants). Mr. Manring does not have a criminal history, drug abuse or serious mental health problems, or a history of unemployment. Mr. Manring has three siblings and their spouses, and numerous life long friends ready to encourage and support his treatment and progress on supervision. He is

motivated to participate in continued counseling and will abide by all of the conditions of supervision.

On February 15, 2012, Deirdre D. von Dornum, Deputy Attorney-in-Charge for the Federal Defenders of New York, Eastern District of New York, testified before the U.S. Sentencing Commission in a Public Hearing on Child Pornography. As part of her testimony, she provided results of research and studies in which she noted: "In any event, persons with pedophilia or 'pedophilic motivations' can be treated and supervised in ways that reduce their risk of future offending. Reviews of sex offender treatment programs show that cognitive-behavioral therapy, relapse prevention, and self-regulation have proven successful in treating offenders." *See* e.g., Tony Ward, Theresa Gannon, & Pamela Yates, *The Treatment of Offenders: Current Practice and New Development with An Emphasis on Sex Offenders*, 15 Int'l Rev. Victimology 183 (2008); Steve Aos, Marna Miller, & Elizabeth Drake, Washington State Institute For Public Policy, *Evidence-Based Adult Corrections Programs: What Works and What Does Not 5-6* (2006) (concluding after review of six "rigorous" studies that "cognitive-behavioral therapy for sex offenders on probation significantly reduces recidivism").

Some U.S. Probation offices throughout the country have adopted supervision and treatment strategies for child sex offenders that are built upon the principles of effective interventions. Properly implemented, these strategies emphasize the need to assess risk factors, identify strengths, and target those needs for intervention. *See generally*, Helene Creager, *Sex Offender Treatment*, U.S. Probation, Central California (2007), available at http://www.Socialworkers.org; Roger Pimentel & Jon Muller, *The Containment Approach to Managing Defendants Charged with Sex Offenses*, 74 Fed. Probation 24 (2010), available at http://www.uscourts.gov/viewer.aspx?doc=/uscourts/FederalCourts/PPS/Fedprob/2010-09/index.html).

Using a multi-disciplinary and inter-agency approach, these strategies focus on treatment, community surveillance, location monitoring, and computer monitoring. *See generally* United States v. C.R., 792 F.Supp. 2d 343, 598 (E.D.N.Y. 2011) (describing the Containment Approach Model for supervision and treatment of sex offenders).

In addition to punishment and protection of the public, when determining the most appropriate sentence, the Court must also consider the defendant's need for treatment. Treatment modalities include cognitive behavioral techniques, clinical polygraphs and plythesmographs, as well as

medication therapy, where appropriate. Medications, such as testosterone lowering agents, have been used to alter sexual responses. *See* e.g., Moulier et. al., *A Pilot Study of the Effects of Gonadotropin-Releasing Hormone Agonist Therapy on Brain Activation Pattern in a Man with Pedophilia*, 56 Int. J. Offender Therapy & Comp. Criminology 50 (2011).

Officers supervising these offenders have specialized caseloads and are directed to monitor research publications so they can use the most effective, evidence-based interventions on sex offenders. Memorandum from Nancy Gregorie on New Sex Offender Management Policy and Procedures (June 27, 2011), available at http://jnet.ao.dcn/Probation_and_Pretrial_Services/Memos/2011_Archive/ppspad110008.html; Administrative Office of the U.S. Courts, *Guide to Judiciary Policy*, Vol 8, Part I (2011).

While under supervised release, child pornography offenders are closely monitored and their freedom is greatly restricted. As the Court is aware, the U.S. Probation Office utilizes a myriad of tools to control the conduct of these offenders. Additionally, the local sheriff's department closely monitors all local sex offender registrants. Consequently, with extremely close monitoring and supervision, and participation in the right kind of treatment, Doug Manring's risk for recidivism is very low.

On March 1, 2013, The U.S. Sentencing Commission released their report to Congress on Federal Child Pornography Offenses. With regard to recidivism, their report concluded:

> The Commission's findings are similar to two recent recidivism studies based on official records (as opposed to self-report data) of a comparable number of adult male child pornography offenders. The first study — which has not yet been published but the results of which were publicly presented in 2009 — was conducted by researchers at the Federal Bureau of Prisons (BOP) and thus is directly relevant for comparison with the Commission's study. The BOP study concerned 870 production and non-production child pornography offenders released from the BOP between 2002 and 2005 and reviewed for evidence of recidivism with an average follow-up period of 3.8 years. Regarding general recidivism rates, 221 of the 870 (25.4%) child pornography offenders were arrested or convicted for a new criminal offense or were arrested or revoked for a "technical" violation. Fifty offenders (5.7%) engaged in sexual recidivism, which the study defined as new non-production child pornography offenses, other non-contact sex offenses, or contact sex offenses.
>
> The second study, which has been published in a peer-reviewed journal, involved 541 adult male Canadian child pornography offenders. That study, which had an average follow-up time of 4.1 years (compared to the Commission's 8.5 years), found that 175 of the 541 offenders (32.3%) had one or more criminal justice failures (arrests or convictions for new criminal offenses or violations of the conditions of their conditional release

leading to arrests or revocations). Sixty offenders (11.1%) engaged in sexual recidivism:

> 28 of the 60 offenders engaged in contact or non-contact sexual offenses (other than child pornography offenses), while the other 32 committed new non-production child pornography offenses. A recidivism study of foreign offenders should be viewed with caution in extrapolating its findings to American offenders because the foreign offenders were not subject to American penal laws and may have involved a cohort of offenders with different characteristics. Nevertheless, the close similarities between the known recidivism rates of the two groups of North American offenders (the vast majority of whom were white males) is noteworthy.

A sentence of 10 years is long enough to satisfy the objectives of punishment and protection of the public. A longer sentence would result in incarceration that is greater than necessary.

## LIFE EXPECTANCY

If Mr. Manring receives a sentence of 10 years, he will be 64 years old upon his release. It is notable that all of the males in Mr. Manring's family have died in their sixties. According to Mr. Manring's brother, Michael Manring, their father died at age 62 of heart disease. Their father's brother died at age 64 of heart disease. Both of their grandfathers died of heart disease at age 60.

The latest figure from the Bureau of Prisons reflects that our federal prisons are at 38% overcapacity. Particularly in light of the BOP budgetary

problems and overcrowding, it does not make sense to incarcerate a defendant longer than 10 years who needs treatment and has proven his ability and propensity to help others and benefit the community in a tangible manner. Moreover, the cost of incarceration should be factored into whether a sentence is "greater than necessary."

**(4); (5)    The advisory guidelines and policy statements:**

The guideline range is from 14 to 17.5 years. As outlined above, a sentence of 10 years is sufficient to satisfy the provisions of punishment and protection of the community while also allowing some time left in his life to engage in mental health counseling and return to his love of music and helping others.

**(6)    The need to avoid unwanted sentencing disparities.**

The Court is aware that the average sentence length for first-time child pornography offenders is now over three times what it was for both first-time and recidivist offenders in 1994. The report to Congress noted above that was released by the U.S. Sentencing Commission on March 13, 2013, concluded that the guideline section 2G2.2 is flawed and needs revision. Given that the conduct for which Mr. Manring pled guilty occurred from in or about 1985 until in or about 1999, the court must compare sentences imposed for similar conduct prior to 1999.

### (7) The need to pay restitution to any victims.

If restitution is ordered, Mr. Manring will be over 65 years old when he is released and will need to make restitution payments.

When determining an appropriate sentence, a sentence that is "sufficient, but not greater than necessary," Doug Manring requests that the Court reflect upon his entire lifetime, not simply the period of time during which he committed the instant offense. He is eager to participate in counseling which will minimize his risk for recidivism and increase the protection of the community. Mr. Manring is in need of counseling and sex offender treatment to minimize the risk to the public, not additional incarceration. He understands that he committed a very serious offense. He hopes that the Court will impose a sentence that is tempered and balanced to reflect just punishment and respect for the law with his personal history and characteristics, his positive achievements, good deeds, remorse, service to the community, determination to gain insight about his behavior through counseling, the resulting low risk of recidivism and the reduced need to protect the community

A sentence of 10 years and supervised release with strict conditions including sex offender treatment, computer restrictions, and other monitoring tools will reduce Mr. Manring's risk of recidivism, protect the public, and provide him with the necessary mental health counseling in the most effective manner. Such a sentence makes sense and meets the goals of sentencing.

Dated this 12th day of April, 2013

_____
Dickson J. Young, Esq.
Jonathan T. Woodward, Esq.
WHITESTONE, BRENT, YOUNG & MERRIL, P.C.
10513 Judicial Drive, Suite 300
Fairfax, VA 22030
Tel:   (703) 591-0200
Fax:   (703) 591-7238
Dickson.Young@wbymlaw.com
Jon.Woodward@wbymlaw.com

*Attorneys for James Douglas Manring*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 12th day of April, 2013, a true and genuine copy of the foregoing was sent via electronic mail by the Court's CM/ECF system to the Office of the United State's Attorney.

_____
Dickson J. Young